UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20246-CR-MOORE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

YOEL PEREZ RODRIGUEZ,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CJA VOUCHER**

On or about June 8, 2012, court-appointed defense counsel Silvia Pinera Vazquez ("Counsel") submitted a voucher application numbered FLS 12 1669, with appended time sheets, requesting $19,612.91 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA").[1] Counsel also submitted a brief letter dated June 8, 2012 and a Supplemental Information Statement to support her voucher application.

Based on our review of the voucher application, the supplemental materials, Counsel's explanation and our review of the case as a whole, we recommend that Counsel be awarded a total amount of $19,612.91 as fair compensation for representing Defendant in this case.

---

[1] The amount requested exceeds the $9,700.00 statutory maximum allowed for representation in a non-capital felony case under the CJA. 18 U.S.C. § 3006A. As a consequence, the Honorable Judge K. Michael Moore referred the voucher application to the undersigned Magistrate Judge for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. [D.E. 118].

## I. BACKGROUND

### A. Applicable Standard Under the Criminal Justice Act

The CJA authorizes the appointment of counsel to represent indigent defendants charged with federal offenses. 18 U.S.C. § 3006A. At the conclusion of a CJA representation, the court shall compensate the appointed attorney for "time expended in court," "time reasonably expended out of court," and "expenses reasonably incurred." 18 U.S.C. § 3006A(d)(1). The district court, as the body empowered to "fix" CJA appointed counsel's compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. *See* 18 U.S.C. § 3006A(d)(5); *United States v. Rodriguez*, 833 F.2d 1536, 1537-38 (11th Cir. 1987). Compensation is capped at $9,700.00, *see* Guidelines § 230.23.20(a), but a court may award a fee in excess of that amount by certifying that the case involved "extended or complex representation" and that the excess amount is "necessary to provide fair compensation" to appointed counsel. *See* 18 U.S.C. §§ 3006A(d)(2) & (3); Guidelines §§ 230.23.40(b) & (c).

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Guidelines § 230.23.40(b). A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id*.

**B.     The Case was Complex**

Under the Guidelines, a request for compensation in excess of the statutory maximum is permitted when the Court finds that the matter was either complex or extended. This case was complex for several reasons. Because the facts are relevant, we briefly discuss them below.

The government commenced this matter by criminal complaint on March 19, 2012 [D.E. 1], followed by the grand jury returning an Indictment naming three (3) defendants on April 10, 2012. [D.E. 35]. The Indictment contained two (2) counts, both naming the Defendant. In Count I, Defendant was charged with conspiracy to import 100 or more kilograms of marijuana into the United States in violation of 21 U.S.C. § 963. In Count II, Defendant was charged with importing 100 or more kilograms of marijuana into the United States in violation of 21 U.S.C. § 952(a). Defendant faced a maximum term of imprisonment of forty years.

At first blush, this matter tended to present a straight-forward drug smuggling case: the Defendant was arrested, after a closely monitored two-day investigation, for traveling to Bimini and returning to South Florida in a vessel that contained several hundred pounds of marijuana in a hidden compartment. However, a closer inspection of the facts and subsequent Court proceedings reveal that this case presented a *factually unique* drug-smuggling case.

On March 16, 2012, the subject vessel was spotted in Miami and, based on some "undisclosed information," law enforcement mounted a full scale surveillance of the vessel and its occupants. Three male and one female subject were observed boarding

the vessel at Key Biscayne marine, who then traveled to a home located in South Bimini. Law enforcement surveilled the vessel during its entire (approximately 48 hour) expedition to Bimini. At some point the following morning, law enforcement observed various unknown suspects carrying items onto the subject vessel and a second vessel.

The next day, both vessels departed Bimini and traveled towards South Florida in tandem. Law enforcement maintained surveillance at all times. Eventually, the vessels were intercepted by law enforcement and directed to the Miami River. There, the vessels were inspected, which revealed that the subject vessel was devoid of marijuana, while the second vessel contained approximately 600 kilograms of marijuana in hidden compartments. Defendant and his co-defendants occupied the vessel containing the marijuana. A fourth individual occupied the vessel without drugs. Law enforcement arrested all four suspects and the criminal complaint named each of them. However, the subsequent Indictment only included the three defendants that occupied the vessel found to contain drugs. The reason the fourth arrestee was released is unknown. Thereafter, the United States Attorney Office of the Southern District of Florida recused itself from this matter based on an undisclosed conflict. The United States Attorney Office of the Middle District of Florida represented the government through trial.

Thus, while on its face, the Indictment presented a "run of the mill" drug smuggling case, the unique facts surrounding this case (*i.e.*, the dismissal of the fourth arrested suspect and the undisclosed conflict that resulted the government's recusal)

4

converted this matter into a unique and factually complex criminal prosecution. As a consequence, Counsel was required to expend more time, skill and effort than normally required in the average case. And, this is demonstrated by the work conducted in this matter, which includes: extensive discovery (partly, into those unique areas), additional investigations, additional motion practice, unique legal research and trial preparation that would not have been required but for these unique circumstances.

First, with respect to discovery, Counsel received three Compact Discs and additional documentation. The government conducted nearly 48 hours of constant surveillance of the subject vessel in order to complete the interdiction of the alleged smuggling of marijuana from Bimini. The surveillance depicted images taken from land, air and marine perspectives. In addition to the video and picture surveillance, the government also produced GPS records for the two vessels, telephone records, reports and additional documents. The video surveillance matter was dense, time-consuming and required extensive man-hours to completely review. In addition to this expected discovery and investigation, Counsel expended time investigating into the nature of the dismissal of the fourth suspect from this matter, which included interviewing several witnesses.

Second, Counsel engaged in motion practice to seek *Brady* material relating to: 1) the nature of the undisclosed conflict that caused the government's recusal and 2) the basis for the government's dismissal fo the fourth suspect. [D.E. 70]. As this matter is collateral to the underlying substantive acts charged, this is the sort of additional work that arises solely due to the unique facts of this case.

5

Third, this matter quickly moved to trial on May 21, 2012. [D.E. 89]. In preparation for trial, Counsel had to research areas relating to Defendant's "mere presence or deliberate ignorance" defense, secret compartments, vessels and proof of knowledge (direct defense issues), along with research relating to the peculiar circumstances surrounding this matter. Counsel's preparation for trial included reviewing all of the discovery material, meeting with the investigator, speaking with witnesses and preparing the Defendant to testify at trial. Indeed, because Defendant relied predominately on a complete lack of knowledge defense, considerable focus and weight was placed on Defendant's in-court testimony. Due to the significant risk and potential pit-falls associated with a defendant testifying in his or her own behalf, this represented a substantial component of Counsel's trial preparation.

Fourth, this matter culminated in a three day trial. Aside from in-court time, Counsel also filed a motion *in limine*, prepared exhibits and reviewed the proposed jury instructions. Finally, while not directly relevant to our inquiry, it is worth noting that Counsel successfully obtained a full acquittal as to all charges for the Defendant.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, we conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case.

### C.     Counsel Requests Fair Compensation

Having concluded that the representation provided by Counsel was complex, we next determine what amount of fees in excess of the case compensation maximum will provide "fair compensation" to Counsel. *See* Guidelines § 230.23.40(c). We may

consider criteria such as: the responsibilities involved measured by the magnitude and importance of the case; the manner in which the duties were performed; the knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; and the nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which the services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.  *Id.*

Counsel requests compensation in the following amounts: (a) $3,162.50 for 25.3 in-court hours, and (b) $16,337.50 for 130.7 out-of-court hours, for a total of $19,500.00 in attorney's fees.  Counsel also requests $160.32 in costs.

    1.    *Voucher Amount – Administrator's Review*

The Court's CJA administrator first reviewed Counsel's voucher for compliance with the guidelines and mathematical accuracy prior to our review.  The CJA administrator made no changes to either the in-court or out-of-court hours.  She thus concluded that the overall amount documented by Counsel in the voucher application for attorney's fees was $19,500.00.  However, the CJA administrator did reduce the costs from $160.32 to $112.91.

    2.    *In-Court Hours*[2]

Counsel seeks compensation for 25.3 in-court hours totaling $3,162.50. The CJA administrator made no adjustments to the number of in-court hours sought.  We approve $3,162.50 as reasonable.

---

[2] The undersigned defers to the Court Clerk to verify all in-court time and expenses allowances.

### 3. *Out-of Court Hours*

In the voucher, Counsel seeks compensation for 130.7 out-of-court hours. As a preliminary matter, the CJA administrator made no changes to the total number of in-court hours. Similarly, upon our independent review of the time-sheets, we conclude that the total times and associated descriptions are reasonable, appropriate and thus represent fair compensation for the work completed due to the nature and complexity of this particular matter. Therefore, we approve the $16,337.50 as reasonable.

### 4. *Expenses*

Counsel seeks $160.32 in costs which, after the CJA administrator's review, was reduced to $112.91. We approve that reduced amount as reasonable.

## II. CONCLUSION

We recommend that Counsel be reimbursed for an amount in excess of the statuary maximum amount of $9,700.00. Based on our review of the voucher application, the time sheets, the docket, filings and record of the case as a whole, we **RECOMMEND** that Counsel be paid $19,612.91 as fair and final compensation for her work in this case.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144,

1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 19th day of September, 2012.

    /s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge